## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 44554-2016

JOSUE BARRIOS,                                   )
                                                 )     **Boise, August 2017 Term**
    Claimant-Respondent,                    )
                                                 )     **2017 Opinion No. 92**
v.                                               )
                                                 )     **Filed: August 24, 2017**
ZING LLC, Employer, and IDAHO STATE              )
INSURANCE FUND, Surety,                          )     **Karel A. Lehrman, Clerk**
                                                 )
    Defendants-Appellants.                  )
                                                 )
                                                 )

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Matthew C. Parks, Elam & Burke PA, Boise, argued for appellants.

Richard S. Owen, Owen and Farney PLLC, Nampa, argued for respondent.

_____

EISMANN, Justice.

    This is an appeal from the order of the Industrial Commission requiring an employer and its surety to pay the cost of a guardian and a conservator for a claimant who suffered a severe, traumatic brain injury as a result of an industrial accident, which left him unable to care for himself. We affirm the order of the Commission.

### I.

### Factual Background.

    While employed by Zing LLC, Josue Barrios ("Claimant") was totally and permanently disabled as a result of an industrial accident when he fell about twelve feet from a ladder and hit his head face first on a concrete floor. He suffered multiple facial fractures, a frontal bone fracture, the loss of sight in his left eye, and a severe traumatic brain injury that caused a major neurocognitive disorder and speech language deficits.

It is undisputed that Claimant is unable to care for himself as a result of his injuries. At the time of the hearing, he was living in a home certified by the Idaho Department of Health and Welfare. The person operating that home speaks Spanish, which is the only language that Claimant speaks. Claimant's treating physician recommended that a guardian and a conservator be appointed for him. In making this recommendation, the physician wrote:

> He requires a professional guardian of the person, and a professional conservator of the estate per the Idaho Probate code. He is unable to plan, advocate, or care for himself in the medical, personal and financial areas of his life due to his cognitive issues and closed head injury sequelae. . . . . The appointment of a guardian and of a conservator for Mr. Barrios is medically necessary due to the traumatic brain injury, which robs him of his ability to make cogent decisions about his medical treatment and about his financial affairs, and which requires the appointment of a guardian and of a conservator to make those decisions and to manage his financial affairs.

Proceedings were instituted to accomplish that recommendation, and the magistrate court in Ada County appointed a guardian and a conservator for Claimant. His employer and the Idaho State Insurance Fund (both herein called "Surety") refused to pay the fees charged by the guardian and conservator, contending that such expenses were not compensable under Idaho Code section 72-432. The Industrial Commission considered that legal issue and held that Surety were responsible for the payment of the fees and expenses of the guardian and the conservator. Surety then timely appealed.


## II.

### Did the Commission Err in Holding that the Fees and Expenses of a Guardian and Conservator Are Compensable under Idaho Code section 72-432(1)?

"The interpretation of a statute is an issue of law over which we exercise free review." *State v. Maidwell*, 137 Idaho 424, 426, 50 P.3d 439, 441 (2002). Idaho Code section 72-432(1) states insofar as is relevant, "[T]he employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury . . ., and for a reasonable time thereafter." The issue is the meaning of the words "other attendance."

Surety contends that those words in context only refer to the expenses that can be characterized as "medical" in nature. The Commission disagreed, reasoning as follows:

> We agree with Defendants that the expenses at issue cannot fairly be characterized as medical, surgical or other treatment, and that if they are compensable as Idaho Code § 72-432(1) expenses, they must qualify as "other attendance". The term attendance refers to the act or state of attending. To attend is to take care of, administer to, devote one's services to, to take charge of, watch over, look after, tend or guard. Against Defendants' assertion that the type of attendance referenced in Idaho Code § 72-432 must be medical in nature, one need only refer to the language of the statute to reject this argument. The attendance that employer is required to provide is medical, surgical and "other", i.e., other than medical.
>
> Claimant has suffered a severe traumatic brain injury, leaving him without higher executive function. It is conceded that this disability is of such severity to render him totally and permanently disabled. The services provided by his guardian and conservator are intended to assist and protect Claimant where he no longer is possessed of the faculties to take care of himself. These services are clearly of a type that fall within the aforementioned definition of attendance.

(Citations omitted.)

The language at issue was included in the Workmen's Compensation Act adopted in 1917. The relevant provision stated:

> *Medical Attendance*
> Sec. 16. The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be required or be requested by the employee immediately after an injury, and for a reasonable time thereafter.

Ch. 81, § 16, 1917 Idaho Sess. Laws 252, 261–62.

The first case that sheds some light on the meaning of this statutory provision is *Irvine v. Perry*, 78 Idaho 132, 299 P.2d 97 (1956). In that case, the claimant's wife sought compensation for the time she was required to take care of him at home due to injuries from an industrial accident that caused him to become a paraplegic. *Id*. at 137, 299 P.2d at 99–100. At that time, the statute was codified as Idaho Code section 72-307. Idaho Code section 73-308 permitted workers and their employers to enter into contracts waiving the provisions of Idaho Code section 72-307 and entering into hospital contracts that provided for medical, hospital, and surgical attendance.[1]

---

[1] The relevant provision in Idaho Code section 72-308 provided:

The issues to be decided on appeal in *Irvine* were:

First, the construction of the hospital contract entered into in this case and the liability thereunder; second, what is a reasonable time under the statute, I.C. Section 72-307, and the hospital contract, within which claimant is entitled to receive medical care, medicine and supplies? Third, is claimant's wife entitled to receive pay for home nursing?

*Id*. at 138, 299 P.2d at 100. This Court held that the hospital contract only waived the rights of the employee under Idaho Code section 72-307 to the extent that the contract gives the employee the rights afforded by the statute and in all other respects the statutory liability remains unimpaired and unreduced.

> The approved contract definitely fixes and limits the liability of the contracting hospital. To the extent, but only to the extent, that such contract gives to the employee the benefits granted to him by the statute, it is a substitute for the employer's statutory liability. The employee, by his waiver of statutory rights, accepts the contract of the contracting hospital only to the extent that it gives to him the rights afforded by the statute. In other respects, the statutory liability of the employer remains unimpaired and unreduced.

*Id*. at 140, 299 P.2 at 102.

We held that because the hospital contract did not provide for home nursing services, they remained the statutory responsibility of the employer.

> In the case now before us, the hospital contract specifically provides for medical, hospital, and surgical attendance (as required by I.C. § 72-308) immediately after an injury, and continuously for a reasonable time thereafter. The contract limits the hospital attendance and nursing to hospital care and nursing in the hospitals designated in the contract, and for such conditions and for such length of time as may be reasonably necessary for the proper treatment of the conditions presented.
> We construe the hospital contract in this case to provide for medicine and medical supplies for a reasonable length of time, but not to provide for home nursing services. *These, not having been contracted for, would remain the statutory responsibility of the employer*.

---

Nothing in this act shall be construed as preventing employers and workmen from waiving the provisions of section 72-307 and entering into mutual contracts or agreements providing for hospital benefits and accommodations to be furnished to the employee.

Such hospital contracts or agreements must provide for medical, hospital and surgical attendance for such employee for sickness, contracted during employment (except venereal diseases and sickness as a result of intoxication), as well as for injuries received arising out of and in the course of the employment.

*Id.* (emphasis added).

In *Irvine*, there was no contention that the claimant's wife was a licensed or even a trained nurse. Rather, the claimant sought compensation because "his wife had been compelled to act as his nurse and spent at least three hours a day in taking care of him, for which he is entitled to reasonable compensation." *Id*. at 137, 299 P.2d at 99–100. The Court did not engage in construing the wording of the statute, but merely stated that the nursing services provided by the claimant's wife "would remain the statutory responsibility of the employer."

The second case to address the wording at issue was *Burch v. Potlatch Forests, Inc.*, 82 Idaho 323, 353 P.2d 1076 (1960). In *Burch*, the issue was whether a claimant was entitled to receive a dental bridge due to having lost two teeth in an industrial accident. *Id*. at 325, 353 P.2d at 1077. The Industrial Accident Board held that the employer and surety were not required to pay the cost of the dental bridge, apparently upon expert testimony that "the presence of such bridge would not affect [claimant's] ability to obtain employment or to remain gainfully employed." *Id*. at 327, 353 P.2d at 1078.

In addressing that issue, this Court stated, "It is too well settled under the decisions of this Court to require the citation of authorities that the provisions of the Workmen's Compensation Law of this state are to be liberally construed in favor of employees." *Id*. With respect to the meaning of then Idaho Code section 72-307, we stated: "It must be borne in mind that said section (72-307) does not attempt to specify every kind of treatment which shall be provided—it does provide for '*other* attendance or *treatment*.' In common parlance and often in the law the word 'treatment' is a broad term and is employed to indicate all steps taken in order to effect a cure of an injury or disease." *Id*. at 328, 353 P.2d at 1078. In reversing the decision of the Industrial Accident Board, we stated that "the uncontradicted expert testimony establish[ed] that a replacement for the extracted teeth would be advisable and proper in the rehabilitation process." *Id*.

In *Burch*, the dental bridge would not be considered medical or surgical treatment. In holding that the words "other . . . treatment" included providing a dental bridge, we rejected the argument that such other treatment must be other medical treatment. Thus, we held that the scope of the word "treatment" was not limited either by the words "medical" and "surgical" that preceded it or by the words "nurse and hospital services, medicines, crutches and apparatus, as may be reasonably required by the employee's physician" that followed it. If the scope of the

5

word "treatment" was not limited by the preceding or ensuing words, neither would the scope of the word "attendance" be so limited.

The third case to address the meaning of the words at issue is *Hamilton v. Boise Cascade Corp.*, 84 Idaho 209, 370 P.2d 191 (1962). One of the issues was whether the employer and surety were required to pay for nursing home care for the claimant. They contended that "the award for domiciliary care was error because it was not reasonable medical service for a compensable injury." *Id*. at 213, 370 P.2d at 192. They asserted that "nursing care must be in conjunction with a physician's attendance, which is amplified by referral to a physician's care or treatment in a hospital as against occasional observation and treatment other than in a hospital." *Id*. at 214, 370 P.2d at 193. The claimant needed the nursing home care because the injury to his right hip caused by falling from a ladder badly fractured the head of the femur, resulting in the head and neck of the femur being removed. *Id*. at 211, 370 P.2d at 191. A metal prothesis was inserted to replace the head and neck of the femur, but it was later removed due to complications that later developed, resulting in a "pistonlike action" by the femur when he walked that caused physical distress. *Id*. at 212, 370 P.2d at 192. He was ultimately able "to dress, feed himself, get into and out of a wheel chair, take a shower, and take care of his toilet needs." *Id*. We held that "domiciliary nursing care is an integral portion of services contemplated by I.C. sec. 72-307 in relation to the facts herein." *Id*. at 215, 370 P.2d at 194. Nursing home care was not mentioned in the statute, and it would not be considered "medical" or "surgical" treatment, nor would it be considered as being "nurse and hospital services." Thus, we held that the word "treatment" was not restricted to medical or surgical treatment.

In 1971, the legislature repealed eleven of the twelve chapters of Title 72 that set forth the statutes governing workmen's compensation and occupational disease compensation, including Chapter Three that included former section 72-307. Ch. 124, § 2, 1971 Idaho Sess. Laws 422, 424. In the same bill, it enacted new legislation, which it stated was "a comprehensive recodification of the workmen's compensation and occupational disease compensation laws of the state of Idaho." *Id.*, § 1, at 424. When doing so, it enacted Idaho Code section 72-432(1), which included the requirement that an employer provide an injured employee "reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus." *Id.*, § 3, at 460–61. Thus, the legislature used the identical

language stating the type of "other attendance or treatment" required to be provided by an employer to an injured employee as has existed since 1917.

Over a century ago, this Court held:

> When a statutory or constitutional provision is adopted from another state, where the courts of that state have placed a construction upon the language of such statute or constitution, it is to be presumed that it was taken in view of such judicial interpretation, and with the purpose of adopting the language as the same had been interpreted and construed by the courts of the state from which it was taken.

*Stein v. Morrison*, 9 Idaho 426, 457, 75 P. 246, 257 (1904).

The same presumption applies when the Idaho legislature repeals a statute and then enacts in its place a new statute that includes the same language that was in the repealed statute. We presume that the legislature intended that such language in the new statute have the same meaning as the construction we placed on that language in the repealed statute. Although that presumption can be overcome, the Surety has not shown that the legislature did not intend that the language at issue in Idaho Code section 72-432(1) was not intended by the legislature to be given the same construction as we previously gave that language in former Idaho Code section 72-307.

We agree with the construction placed on the statute by the Industrial Commission and that the services of a guardian and a conservator were other attendance that was necessary because "Claimant has suffered a physical injury to his brain, which leaves him unable to perform certain functions necessary to day-to-day living."

### III.

### Conclusion.

We affirm the order of the Industrial Commission, and we award Respondent costs on appeal.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**

7