377 P.2d 794

Enic C. CLEVENGER, Employee, Claimant-Appellant,

v.

POTLATCH FORESTS, INC., Employer, and Workmen's Compensation Exchange, Surety, Defendants-Respondents.

No. 9123.

Supreme Court of Idaho.

Jan. 8, 1963.

Paul C. Keeton, Lewiston, for appellant.

Wynne M. Blake, Lewiston, for respondents.

KNUDSON, Justice.

Appellant, Enic C. Clevenger, suffered an industrial accident on August 9, 1955, while employed by respondent, Potlatch Forests, Inc. The facts and circumstances of the accident were considered by this Court in Clevenger v. Potlatch Forests, Inc., 82 Idaho 383, 353 P.2d 396, in which case an award in the amount of $1800.00 for partial permanent disability was affirmed. Following said accident appellant continued his employment except intermittently for periods when because of recurrences of pain he was unable to work. About May 1, 1960, his condition became worse and he finally ceased work on June 27, 1960. Following the accident appellant consulted several physicians and at times was conservatively treated with medication and therapy.

On August 17, 1960, a myelogram was taken and two days later a laminectomy was performed on appellant's low back. He returned to work on December 5, 1960.

During the summer of 1960 appellant made several attempts to contact the manager of respondent surety, Workmen's Compensation Exchange, with a view of discussing his need for further treatment. He was unsuccessful in such efforts and authorization to have surgery performed was not obtained.

On January 30, 1961, appellant filed with the Industrial Accident Board a "Petition for reimbursement for medical benefits procured by claimant, pursuant to Sec. 72–307 I.C." Under said petition appellant seeks recovery of medical and kindred expenses incurred by him on account of medical and surgical treatment, together with hospital care subsequent to July 29, 1960, which expenses were incurred in connection with the examination and surgery hereinabove mentioned, allegedly necessitated by his accidental injury of August 9, 1955. From an order denying reimbursement this appeal is taken.

The specifications of error are directed to the "Ultimate Finding and Ruling" of the Board, copy of which follows:

"The operation performed by Dr. Baranco was not emergent (ff. 86–7), but elective (f. 90). The man was ambulatory (f. 86). He could continue to live and possibly work with his discomfort, as he had in the past. That the operation was necessary, as the Board finds, is best shown by the ultimate event— the man returned to his regular work, which he then performed without pain.

"Nevertheless, Clevenger's election to have the operation was unreasonably belated. He could have exercised such election in 1956, or at any time thereafter within four years after the accident. His recovery herein is barred by Sec. 72–607, Idaho Code, the provisions of which apply to any form of compensation, including medical and kindred expenses under Sec. 72–307."

Appellant's assignments of error I and III are essentially identical, wherein it is contended that the Board erred in ruling that medical attention provided for by I.C. § 72–307, or reimbursement in the event of failure to supply medical attention, are barred by I.C. § 72–607.

I.C. § 72–307 provides:

"The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, as may be required or be requested by the employee *immediately after an injury, and for a reasonable time thereafter.* If the employer fails to provide the

same, the injured employee may do so at the expense of the employer. All fees and other charges for such treatment and services and compensation therefor shall be subject to regulation by the board. The pecuniary liability of the employer for the treatment and other service herein required shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured person. In determining what fees and charges are reasonable, the board shall consider the increased security of payment afforded by this act." (Italics supplied)

I.C. § 72–607 provides:

"On application made by any party *within four years of the date of the accident* causing the injury, on the ground of a change in conditions, the board may at any time, but not oftener than once in six months, review any agreement or award, and on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded, subject to the maximum and minimum provided in this act, and shall state its conclusions of fact and rulings of law, and immediately send to the parties a copy of the award, but this section shall not apply to a commuta-

tion of payments under section 72–321." (Italics supplied)

I.C. § 72–607 in 1957 was amended to provide that the application must be made within *five years* of the date of the accident. However such amendment is not retroactive and since the accident here involved occurred in 1955 the four year limitation applies. Wanke v. Ziebarth Const. Co., 69 Idaho 64, 202 P.2d 384; Kelley v. Prouty, 54 Idaho 225, 30 P.2d 769.

The issue here presented requires a determination whether the time limit imposed by I.C. § 72–607 applies to the attendance and services provided for by I.C. § 72–307.

The record discloses that the only award made in this cause was entered on December 11, 1959, in favor of appellant in the amount of $1800.00 as specific indemnity for partial permanent low back disability. Appellant's petition specifically states that the requested reimbursement is sought pursuant to I.C. § 72–307; it does not allege any change of condition or seek a modification of the award.

No other petition for medical or surgical expenses has been filed by appellant nor has any order, other than the one appealed from been entered by the Board relative to appellant's medical or surgical expenses.

In appellant's original petition, upon the hearing of which an award of $1800.00 for partial permanent disability was made, it is

stated that "At the present time claimant is in need of surgery for the repair of injuries to a disc or discs in his back." However, no medical or surgical expenses were requested by the petition, nor did the Board allow or disallow any sum as such expense. The following quoted statement of the Board contained in the findings and order here appealed from is convincing that the Board did not, in the original proceedings, consider the allowance or denial of any medical expenses incurred by appellant, to-wit:

"In the original proceedings no recovery was sought for total temporary disability compensation or for medical expenses, such matters having been previously adjusted between the parties."

The record does not contain a finding by the Board as to the extent that medical treatment or care was required by appellant from the date of the accident to the time of his surgery. However the findings do indicate that he had repeatedly consulted physicians and specialists. There had been no finding that appellant was medically or surgically healed of his injury prior to his surgery.

Respondents cite Wanke v. Ziebarth Const. Co., supra, as supporting their contention. In that case the Court specifically stated that it was not therein determining how the statutes here involved should be construed. The application in that case was based upon a "change in conditions" and the Board had previously found that claimant was "surgically healed of his injuries". The following quotation from said decision strongly indicates that neither the Board nor the Court was convinced that the physical trouble in connection with which recoupment of disbursements for medical treatment was sought, was the result of a compensable injury. While referring to I.C. § 72–307, the Court stated:

"Nor do we find any language therein which impliedly requires an employer to provide treatment for undiscovered physical troubles arising after all the known injuries have been treated and taken care of."

While the furnishing to the injured employee of medical, surgical, hospital services and other attendance or treatment as required by I.C. § 72–307 may be treated as payment of compensation, such is not the subject of an agreement or award which is contemplated under the provisions of I.C. § 72–607, as being subject to modification *on the ground of a change in conditions.* It is a change as to the disability of the injured employee which authorizes the modification of an award or agreement under I.C. 72–607. Mahoney v. City of Payette, 64 Idaho 443, 133 P.2d 927. The attendance mentioned in said statute, I.C. § 72–307, *is required* to be furnished

"immediately after an injury, and for a reasonable time thereafter."

The issue here presented was considered by this Court in Irvine v. Perry, 78 Idaho 132, 299 P.2d 97, wherein Irvine did not assert any change of condition nor ask for a modification of an award as provided in I.C. § 72–607, but sought a determination of his right to medical attendance as provided in I.C. § 72–307. His condition from the time of the injury was permanent, requiring continual medical treatment. This Court held that I.C. § 72–607 had no application to the situation and that the Industrial Accident Board was correct in holding:

"* * * the four-year limitation thereof does not apply to medical attendance, as defined in sec. 72–307, in a case of total and permanent disability, as defined in sec. 72–311, particularly when the original injury causes continuous or recurrent symptoms which require medical attendance."

Although permanent disability was involved in the Irvine case such disability was not controlling in determining his claimed right to medical treatment. The nature or extent of disability is not determinative of an injured employee's right to the attendance provided for in said § 72–307, it is the necessity for such services that controls. Among the primary duties of an employer to an injured workman is to furnish him reasonable medical, surgical or other treatment necessary to rehabilitate him and as far as possible restore his health, usefulness and earning capacity. Koegler v. C. F. Davidson Co., 69 Idaho 416, 209 P.2d 728. By said § 72–307 it is contemplated that the injured workman shall be provided with reasonable medical, surgical and other treatment when and for such period as such services or treatment are reasonably necessary. The Board erred in concluding that, exclusive of any other reason, appellant's failure to exercise an election to have surgery within the four year period specified in § 72–607 bars his right to recovery under his petition.

Appellant contends that the Board erred in finding that "Clevenger's election to have the operation was unreasonably belated." From the language used it must be assumed the Board felt that appellant should have elected to have the operation at an earlier date. However, in view of other findings, we do not construe said finding as a conclusion on the part of the Board that the surgery did not take place *within a reasonable time after the injury*, within the meaning of I.C. § 72–307.

Hereafter we will refer to the "other findings" above mentioned but we consider it proper to here discuss briefly what is meant by "within a reasonable time" as used in I.C. § 72–307. What is a reasonable time within which an act is to

be performed depends on the subject, the situation of the parties and the circumstances attending the performance. (12 Am.Jur. 855) A "reasonable time" means a period which is created because of some justifiable reason. In determining what is a reasonable time for claimant to receive medical treatment and supplies we look to the statute and the facts and circumstances of the particular case. Generally a reasonable time would be as long as the condition and necessity for treatment exists. (Irvine v. Perry, supra.)

As to the necessity for the operation the Board made the following specific finding:

"That the operation was necessary, as the Board finds, is best shown by the ultimate event—the man returned to his regular work, which he then performed without pain."

The Board also made the following finding which we consider inconsistent with a conclusion that the operation was unreasonably belated:

"The desirability of a diagnostic myelogram and the possibility of surgery of some type had been considered by his attending physician and consultants and examining specialists in 1956 and these matters were discussed with plaintiff. Though his complaints of pain were symptomatic of a herniated disc, none of the physicians had found sufficient evidence to make such a diagnosis. Pain symptoms, however, were suggestive of nerve root impingement, but the physicians could only speculate upon the precise pathology. * * * Under urging over a period of two or three years from two of his relatives, he finally visited Dr. Baranco, who had surgically treated both of them. Dr. Baranco in performance of the laminectomy discovered precisely the cause of the patient's symptoms."

Dr. Baranco was consulted by appellant in 1960 and, as we construe the foregoing finding, was the first doctor to discover precisely the cause of appellant's symptoms. His attending physician and consultants and examining specialists previously consulted, had not found sufficient evidence to make a like diagnosis—they could only speculate upon the precise pathology. The finding indicates that appellant submitted to repeated examinations, but prior to August 17, 1960, no one knew for certain what was causing appellant's distress and symptoms. The record shows that two days after submitting to a myelogram (by which his condition was correctly diagnosed) the surgery (laminectomy) was performed and in less than four months appellant was back at work and "feeling fine".

Since the Board denied appellant's petition for an improper reason the order denying reimbursement is reversed and the cause remanded to the Board with instruc-

tions to determine whether the services (the cost of which appellant claims reimbursement) were furnished within a reasonable time after the accident as specified in I.C. § 72–307 and whether the charges therefor are reasonable. Costs to appellant.

TAYLOR, McQUADE and McFADDEN, JJ., concur.

SMITH, Chief Justice (dissenting).

I am unable to agree with the majority opinion. I entertain the view that the Industrial Accident Board's order denying to claimant the medical and kindred compensation benefits which he seeks in this proceeding is correct and should be affirmed. I shall briefly delineate my reasons therefor.

The facts, set forth in the majority opinion need not be repeated here.

The issue, simply stated, is whether I.C. § 72–608 limits the time within which a claimant may pursue the right to seek benefits,—previously denied,—provided by I.C. § 72–307 (medical and kindred services).

The majority opinion rules, in effect, that the time limit imposed by I.C. § 72–608 is inapplicable to I.C. § 72–307 where a claimant, as here, in a prior determination in the same proceeding, obtained an award of specific indemnity to compensate him for a partial permanent disability, but was denied an award of compensation for medical and kindred services in futurity, designed to alleviate a physical ailment pleaded and ruled upon in such prior determination; and without appealing from such determination, and after the time limit of I.C. § 72–608 had expired, he subsequently sought relief in the same proceeding for such ailment. Such ruling necessarily connotes that an award for medical and surgical services cannot be regarded as an award by the Board under I.C. § 72–608.

Armed with the authority of Irvine v. Perry, 78 Idaho 132, 299 P.2d 97, the majority opinion attempts to justify such ruling on the theory that this is the first time since appellant's injury that he has petitioned for expenses of such attendance as provided for by I.C. § 72–307. Appellant in the proceeding at bar *does not* seek a modification on changed conditions of the previous award in his favor.

The author of the majority opinion discerns that Irvine v. Perry is distinguishable from the case under consideration, but I feel that he does not distinguish it in its true perspective. Total and permanent disability was involved in the Irvine case, whereas it is not in the case here. However, the majority view is to the effect that the nature or extent of disability is not determinative of an injured employee's right to the attendance provided for by I.C. § 72–307, but that it is the necessity for such services that controls. No language

is contained in the Irvine case to support that position. Moreover, in the Irvine case, Irvine had never previously petitioned the Board for a determination concerning his injury and the compensation benefits to which he was entitled; and the Board had not therefore made a determination in regard to Irvine's rights in the premises.

In the case here, appellant had previously been before the Board, in this same proceeding, and had had his rights to compensation determined by an award made in his favor for specific indemnity to compensate him for a partial permanent disability; also, he had claimed compensation for surgery, in futurity, for an alleged disc condition in his back, which specific claim the Board had denied, and from which denial appellant did not appeal. Thus, the appeal statute, I.C. § 72–608, became and is germane, and precluded appellant from further pursuing the remedy which he seeks herein. Facts to support this position are later discussed herein.

In the Irvine case the Court stated:

"The Industrial Accident Board was correct in holding: ' * * * the four-year limitation thereof [I.C. § 72–607] does not apply to medical attendance, as defined in sec. 72–307, in a case of total and permanent disability, as defined in sec. 72–311, particularly when the original injury causes con-

tinuous or recurrent symptoms which require medical attendance.' "

This holding was predicated upon a like determination by the Board based upon its finding that the nature of Irvine's disability required continuous medical treatment. I construe this language to mean specifically what it says and no more, i. e., that the four-year limitation is inapplicable to the right to receive medical attendance in a case of total and permanent disability as defined in I.C. § 72–311, particularly where it is determined by the Board that the nature and extent of the injury require continuous medical services, and the Board makes an award accordingly. Moreover the provisions of I.C. § 72–608 were not applicable to preclude any recoveries accorded Irvine, since no such recovery had been previously determined; and Irvine was seeking an original determination and not a review on changed conditions under I.C. § 72–607.

In the case at bar the facts clearly indicate that appellant's injury could not be and was not classified as "total and permanent" under I.C. § 72–311. The record discloses that the award entered December 11, 1959, in favor of appellant was for a specific indemnity to compensate him for a partial permanent disability equivalent to 40% of the loss of one leg at the hip, amounting to 72 weeks at $25 per week, aggregating $1800.

In the majority opinion it is stated: "No other petition for medical or surgical expenses has been filed by appellant nor has any order, other than the one appealed from been entered by the Board * * *" relative to the expenses which are the subject of appellant's petition. In that regard I point specifically to the record of this proceeding. The Industrial Accident Board did consider the advisability of surgery and the elements of compensation in futuro as regards surgery, in the determination of appellant's right to compensation in its December 11, 1959, award. The Board adopted the opinion of Dr. Alfred R. Kessler and concluded that the optimal time for operation had passed. I also refer to "Exhibit .H", a part of the record herein, which is a report by Dr. Kessler, dated September 8, 1959. This report sets forth a history of events regarding appellant's accident and injury. The report contains information concerning the doctor's examinations and treatment of appellant. This report was also introduced in evidence at the original hearing before the Board which culminated in appellant's partial permanent disability award; from which award the employer, Potlatch Forests, Inc., and the surety, Workmen's Compensation Exchange, appealed, but claimant Clevenger did not. Clevenger v. Potlatch Forests, Inc., 82 Idaho 383, 353 P.2d 396. Dr. Kessler's report contains the following language: "If this patient has had a disc in the past or has a disc at the present time, the optimal time for operation has long since past."

The first or original hearing in this proceeding grew out of this same subject matter, before the Board and the Court at the second hearing, involved on this appeal, to-wit, appellant's covered personal injury, Clevenger v. Potlatch Forests, Inc., 82 Idaho 383, 353 P.2d 396, decided after the first hearing; appellant's petition upon which the first hearing was grounded, alleges that he has a "partial disability which is unknown in amount and that at the present time, claimant is in need of *surgery* for the repair of injuries to a disc or discs in his back." (Emphasis supplied.) At that first hearing before the Board, Dr. Kessler testified, after stating his estimate of claimant's partial permanent disability equal to 40% of the loss of one leg at the hip, that in his opinion surgery was not recommended for claimant's condition, and more specifically, the "optimal time for operation had past." The Board adopted Dr. Kessler's views, as is shown by the following excerpt from the Board's findings of fact:

"*Neurological Diagnosis.* Claimant's subjective symptoms of pain clinically demonstrable (f. 76). Definite neurological signs indicating nerve root irritation on the right, probably arising at the L 4–5 interspace. Whether this

actually represents a protrusion of the disc at the present time or scarring in the nerve root from a formerly protruding disc cannot be determined.

"*Surgery Not Recommended.* Optimal time for operation has long since passed. Relief from an operation now questionable." (Transcript, case No. 8867, p. 42).

A review of the record of that first hearing discloses that appellant's medical and surgical needs were considered by the Board prior to its final determination. The Board concluded that compensation for surgery was not warranted.

The majority opinion points to the remark of the Board contained in the record here, of the second hearing, that "In the original proceeding (first hearing) no recovery was sought for * * * medical expenses, such matters having been previously adjusted between the parties." True, as indicated in the majority opinion, the Board did not then, at the time of the first hearing, consider the medical expense involved at the later second hearing and on this appeal, simply because these later expenses had not been incurred at the time of the first hearing. What was involved at that time was the issue whether appellant was entitled to surgery to alleviate the alleged intervertebral disc condition which he pleaded; concerning that issue evidence was introduced and the Board denied relief

to appellant upon such issue; appellant did not appeal from such adverse holding. He therefore is precluded from raising such issue, because he failed to appeal within thirty days as provided by I.C. § 72–608; and he does not seek modification of such previous determination on grounds of changed conditions, hence the four-year limitation period of I.C. § 72–607 precludes him from modification of the previous determination on changed conditions.

In the pleadings—the second hearing—, involved on this appeal, respondents' in their answer set forth as an affirmative defense and as a plea in bar, *the prior determination* of the issue involved at the first hearing, in the proceeding at bar, in language as follows:

"That heretofore and on December 11, 1959, the Industrial Accident Board of the State of Idaho made and entered in the above entitled matter its award including therein Findings of Fact and reciting therein in paragraph 12 of said Findings entitled 'Medical Examination Alfred R. Kessler, M.D., September 4, 1959,' the following:

"'*Surgery Not Recommended.* Optimal time for operation has long since passed. Relief from an operation now questionable.'

"The Industrial Accident Board further found in paragraph 13 entitled

'Partial Permanent Disability' reciting its conclusion from the testimony of Dr. Alfred R. Kessler as follows:

" 'He, quite evidently on the test of physical impairment, estimated Clevenger's partial permanent disability as equal to 40% of the loss of a leg at the hip.' "

And additionally as an affirmative defense respondents pleaded in bar the limitations of I.C. § 72–607 in language as follows:

"Five years, five months and twenty-three days have elapsed since August 9, 1955, the date of claimant's injury. By reason of said lapse of time said petition for additional compensation benefits by way of reimbursement of medical expense incurred by claimant is barred under provisions of Section 72–607 of the Idaho Code and by the holding of the Supreme Court of this State in Wanke v. Ziebarth Construction Co., 69 Idaho 64, 202 P.2d 384."

I.C. § 72–608 provides in part:

"Appeals from board.—An award of the board in the absence of fraud, shall be final and conclusive between the parties, except as provided in section 72–607, unless within 30 days after a copy has been sent to the parties, either party appeals to the Supreme Court. On such appeal the jurisdiction of said court shall be limited to a review of questions of law."

The provisions of such section of the statute preclude appellant from attempting to challenge the Board's prior determination of December 11, 1959.

The two possible ways in which Clevenger could have challenged the Board's award made at the conclusion of the original hearing, are (1) by appealing to this Court within thirty days after copy of such award had been sent to the parties and, (2) by seeking a modification on change of conditions as provided in I.C. § 72–607. Time for pursuing either remedy, i. e., appeal, or application for modification on changed conditions, had expired as of the time when Clevenger filed his petition which furnished the basis of the second hearing and of the present appeal.

I.C. § 72–607 provides:

"On application made by any party within four years of the date of the accident causing the injury, on the ground of change in conditions, the board may at any time, but not oftener than once in six months, review any agreement or award, and on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded, subject to the maximum or minimum provided in this act, and shall state its conclusions of fact and rulings

of law, and immediately send to the parties a copy of the award, but this section shall not apply to a commutation of payments under section 72–321."

In Mell v. Larson, 54 Idaho 754, 36 P.2d 250, the injured employee was awarded compensation. Eight months later he sought additional compensation on the ground of change in conditions. This Court affirmed the Board's holding that no change in condition had been proved, saying:

"* * * Hearing on the question of a change in condition is authorized under section 43–1407, I.C.A. [now I.C. § 72–607], for the purpose of allowing the board to make an award ending, diminishing, or increasing compensation previously agreed upon or awarded. Such an award under that section of the statute is made entirely on a change in conditions occurring after the date of the previous award, and which change in condition, if for the worse, is directly related to the injury resulting from the accident upon which the first award was based. *The board and the courts then are restricted to a consideration only of a condition arising after the former award."* (pp. 763–764, 36 P.2d p. 253) (Emphasis supplied.)

In Zapantis v. Central Idaho Min. & Mill. Co., 61 Idaho 660, 106 P.2d 113, Zapantis had obtained an award. Thereafter he applied for modification grounded on change in conditions. The Board denied the application. Later on, Zapantis made a second application and again the Board found that there was no change in conditions. On the second application, however, the Board ordered the original award withdrawn and awarded Zapantis additional compensation. On appeal therefrom this Court held the Board's action to be improper, in language as follows:

"We are confronted in the very outset of our consideration of this matter, with the problem as to whether or not the original award of April 17, 1935, became *res judicata;* and likewise, whether the order of January 30, 1936, became *res judicata* as to any change in conditions having or not having occurred *up to that time.*

\*    \*    \*    \*    \*    \*

"The Board, having originally found and held that 'no change in conditions' had occurred, was without jurisdiction to vacate the award which had become final, and to thereupon hear the case de novo and enter a new and different award as if no award had ever been made. * * *

"There must be an end to litigation but that can not be attained if, years after a judgment had been entered and has become final, and the personnel of the court or board has changed, the

whole case can be reopened and passed upon anew."

Claimant Zapantis subsequently sought to have the original award set aside, which resulted in the decision, Zapantis v. Central Idaho Min. & Mill. Co., 64 Idaho 498, 136 P.2d 154, wherein the Court stated:

"* * * The doctrine of res judicata applies to all questions which might have been raised, as well as to all questions which were raised. Joyce v. Murphy Land & Irrigation Co., 35 Idaho 549, 208 P. 241; South Boise Water Co. v. McDonald, 50 Idaho 409, 296 P. 591; Bowers v. Smith, supra [Idaho 118 P.2d 737]."

In Wanke v. Ziebarth Const. Co., 69 Idaho 64, 202 P.2d 384, the Board had made an award in favor of claimant for permanent partial disability. Five years after the accident, claimant filed a petition seeking "total and permanent" disability grounded on change in conditions. Additionally, he sought reimbursement for medical and kindred expenses. At page 78, 202 P.2d at page 393 the Court said:

"We come now to the question: May claimant Wanke recover money expended for hospital and medical care (after the last award of the Board April 10, 1946) on an application therefor filed with the Board November 6, 1947, more than five years after the date he was accidentally injured?"

After quoting the pertinent statutory provisions, I.C.A. §§ 43–1107 and 43–1407, now I.C. §§ 72–307 and 72–607, the Court said:

"It should be pointed out here the record does not show claimant's injuries required continuous medical treatment and care from the date of the accident, as was apparently true in Flock v. J. C. Palumbo Fruit Co., 63 Idaho 220, 118 P.2d 707. On the contrary, the record shows that the Board found claimant 'was surgically healed of his injuries,' though left in a condition of permanent partial disability. So that it seems unnecessary to construe either or both of the above quoted sections with reference to whether they do, either when construed together or singly, provide for continuous treatment regardless of the length of time involved. There remains for consideration the contention that regardless of the time which may elapse between the date injuries are sustained and the development of physical troubles later (even where as in the case at bar, the injured employee immediately after the accident is given surgery, hospitalization and medical treatment), [whether] the expense incurred or paid out for additional medical, surgical and other treatment may be recovered, and so on ad infinitum.

"In construing section 43–1107, supra, [now I.C. § 72–307], it must be

conceded it does not *expressly* require an employer to provide an injured employee with 'medical, surgical or other attendance or treatment' under such circumstances." (page 79, 202 P.2d page 393).

"Under such circumstances," since it refers to I.C. § 72–307, likewise must refer to its statutory four-year limitation period which, after expiration of such period after the date of injury, precludes recovery to a claimant of medical and kindred expenses "ad infinitum," as is exactly identical to what appellant Clevenger seeks herein.

Continuing with the language of the Court:

"* * * Nor do we find any language therein which impliedly requires an employer to provide treatment for undiscovered physical troubles arising after all the known injuries have been treated and taken care of. Nor do we find any such requirement construing secs. 43–1107 and 43–1407, [I.C.A. now I.C. §§ 72–307 and 72–607] supra, together, unless these two sections when construed together be construed to include medical, surgical and other attendance and treatment as 'compensation', within the meaning of sec. 43–1407, supra. *Assuming, but not deciding, these sections should be so construed, would not aid claimant in recovering in that his claim would be barred*

*even under that construction.*" (Emphasis supplied.)

I entertain the further view that the majority opinion, without saying so, overruled the cases of Zapantis v. Central Idaho Min. & Mill. Co., 64 Idaho 498, 136 P.2d 154, and Wanke v. Ziebarth Constr. Co., 69 Idaho 64, 202 P.2d 384, as regards the rulings of those cases, hereinbefore referred to and discussed.

Furnishing of medical, surgical and hospital services to an injured employee must be regarded as payment of compensation. State ex rel. Wright v. C. C. Anderson Co. of Emmett, 65 Idaho 400, 145 P.2d 237; Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831; Irvine v. Perry, 78 Idaho 132, 299 P.2d 97; W. J. Newman Co. v. Industrial Commission, 353 Ill. 190, 187 N.E. 137, 88 A.L.R. 1188; Pfahler v. Eclipse Pioneer Division of Bendix Aviation Corp., 21 N.J. 486, 122 A.2d 644, 647. See Mangieri v. Spring Tool Co., 62 N.J.Super. 32, 161 A.2d 765, 767, holding that "medical treatment" was part of payment of future compensation within the meaning of a statute which required a petition for compensation to be filed within two years from the date of last payment of compensation.

Returning to the aspect of the Irvine case wherein the Industrial Accident Board determined and this Court held that in the case of total and permanent disability requiring continuous medical and kindred

services the four-year statute of limitation, I.C. § 72–607, has no application, I point to the following:

(1) No determination had been made in the Irvine case during the period of four years from and after the injury. The proceeding was for an original determination concerning Irvine's right to receive compensation benefits, particularly medical and kindred services, and for adjudication of the period during which he was entitled to receive the same. It was admitted by the parties, although the Board found, that Irvine suffered total and permanent disability.

(2) The Industrial Accident Board, in its decision, found that Irvine suffered total and permanent disability and would require medical and kindred services during the remainder of his life because of his continuous and recurrent symptoms occasioned by the accident and resulting injuries.

The Board thereupon awarded Irvine compensation as for a total permanent disability, being for the period of 400 weeks from and after the date of the accident at the maximum rate, and for the remainder of his life at the minimum rate, I.C. §§ 72–310 and 72–311; and further awarded him reasonable and necessary medical and kindred services on account of his condition suffered as the result of the injury for the duration of his life. (See pages 296–272 of the Transcript in the Record on appeal in the Irvine case.)

I.C. § 72–607 provides for review of an award at any time within four years of the accident causing the injury on ground of change in conditions.

In the case of a determination and award, such as in the Irvine case, an interested party, such as the employer or surety, being liable for payment of the compensation benefits, could make application within four years from the date of the accident causing the injury, for a review of the award and for modification thereof on the ground of change in conditions.

The Irvine case was not a review on ground of changed conditions. It grew out of an original application for an award of benefits for total and permanent disability and for expenses of continuing reasonable and necessary medical and kindred services.

The fact that the Irvine determination was made more than four years after the date of the injury is immaterial, inasmuch as it was an original determination, and not the result of any application for review on ground of changed conditions. The law, I.C. § 72–607, is self-executing. Upon entry of such original determination, the four-year period provided for review on changed conditions having expired, the determination was not subject to review on changed conditions in the future. This reasoning appears applicable inasmuch as the 1931 amendment did away with the then existing right of a party to apply for modifica-

tion on ground of change in conditions at any time, by limiting such period of time to four years from date of the accident. Under the existing law, as regards a continuing award (as in the Irvine case), at the expiration of the four-year period of I.C. § 72–607, any right to apply for modification expires. A claimant having a continuing award may receive such benefits without interference of attempted modification after expiration of the period of four years from date of accident.

Such appears to have been legislatively intended, inasmuch as I.C. § 72–607, at the time of its original enactment, S.L. '17, ch. 81, § 56, until its amendment in 1931, S.L. '31, ch. 222, § 6, did not contain a limitation of time within which an application could be made on the ground of a change in conditions. Until 1931, such section of the statute provided: "On the application of any party on the ground of a change in conditions, the Board may * * *," etc. Therefore the 1931 amendment which limited the time, within which an application on changed conditions could be made, to four years after the date of the accident, prohibits review of a continuing award, after the expiration of the four-year period. This question was not involved in the Irvine case since that proceeding, as heretofore pointed out, was for an original determination, which resulted in a continuing award.

In brief summary:

(1) The issue of Clevenger's asserted right to surgery to alleviate the intervertebral disc condition, which he pleaded in his first petition, was adjudicated by the Board at the conclusion of the first hearing, and is so shown as a part of the record of this proceeding.

(2) Clevenger did not appeal from such adjudication.

(3) Such adjudication has become and is res judicata, by virtue of (a) such failure to appeal, I.C. § 72–608, and (b) expiration of the statutory four-year limitation period from the date of Clevenger's injury, before Clevenger sought the same relief by the filing of his second petition, assuming that he sought modification of the Board's previous determination, on the ground of change in conditions. I.C. § 72–607.

(4) The Industrial Accident Board properly denied relief to Clevenger on such petition.

The order of the Industrial Accident Board denying relief to appellant Clevenger should be affirmed.